**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JAMES SIMS, TERRIE SIMS, NEAL COMEAU, and LILIANA COMEAU, individually and on behalf of others similarly situated,** | ) ) ) ) | |
| | ) | **Case No. 22-580** |
| **Plaintiffs,** | ) ) | **JURY DEMAND** |
| **v.** | ) ) | |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs James Sims, Terrie Sims, Neal Comeau, and Liliana Comeau, individually and on behalf of others similarly situated (collectively "Plaintiffs"), and for their Class Action Complaint against Allstate Fire and Casualty Company ("Allstate Fire") and Allstate Vehicle and Property Insurance Company ("Allstate Vehicle") (collectively "Defendants"), state and allege the following:

### OVERVIEW OF CLAIMS

1.      This is a class action case arising out of a dispute between policyholders and two property insurers, Defendants, both of which are subsidiaries of the Allstate Corporation. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be "depreciated" by Defendants when Defendants calculate their actual cash value ("ACV") payment obligations for structural property losses.

2.      This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) or labor used to construct a building (such as a roofer or electrician) become "embedded" within the building product or home and can be depreciated as part of an ACV calculation.

3.      Future labor is at issue because, pursuant to Defendants' property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to a damaged structure. In contrast to ACV coverage, replacement cost value coverage payments ("RCV") are made retrospectively, after repairs have been completed.

4.      Property insurers within the Allstate insurance group, including Defendants, have faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments. *See, e.g.*, *Perry, et al. v. Allstate Indem. Co.*, 1:16-cv-01522 (N.D. Ohio); *Ferguson-Luke v. Allstate Property & Casualty Ins. Co.*, 1:20-cv-00807 (N.D. Ohio); *Maniaci v. Allstate Ins. Co.*, 1:20-cv-00613 (N.D. Ohio); *Lado v. Allstate Vehicle and Prop. Ins. Co.*, 1:20-cv-01417 (N.D. Ohio); *Huey v. Allstate Vehicle and Prop. Ins. Co.*, 4:19-cv-00153 (N.D. Miss.); *Hester v. Allstate Vehicle & Prop. Ins. Co.*, 20L0462 (St. Clair County, Illinois); *Mitchell et al. v. Allstate Vehicle Prop. Ins. Co., et al.,* 2:21-cv-00347 (S.D. Ala.); *Thaxton v. Allstate Indem. Co.*, 2020L000908 (Madison County, Illinois); *Shahan v. Allstate Vehicle and Prop. Ins. Co.*, 2:22-cv-01246 (W.D. La.).

5.      Most property insurers in Texas do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Texas do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld, *i.e.*, a form that expressly uses the terms "labor" and

"depreciate" or "depreciation" and addressing the issue within the text of the policy or endorsement. Others, such as Defendants, withhold future labor as depreciation even under policies that do not contain such provisions. Defendants' policies at issue did not include any provision or language that allow them to withhold labor as depreciation when making ACV payments for structural loss claims.

6.      The issue presented is a question of law (whether labor may be depreciated in the absence of a labor depreciation permissive form) and was recently addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law).

7.      In *Mitchell*, the Firth Circuit held that both the insurer and insured's interpretations of the otherwise undefined phrase "actual cash value" were reasonable, thus the policy was ambiguous and must be construed in favor of the insured. *Id.* at 703, 707.

8.      The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same as it relates to all of the contractual interpretation issues before the Court.  The chart below compares the consistency between the two States:

| **Issue** | ***Mitchell v. State Farm*** **(Mississippi)** | **Case Before the Court (Texas)** |
|---|---|---|
| Interpretation of Ambiguous Provisions within Insurance Policies | Under Mississippi law, "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 705 (5th Cir. 2020) (citing *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978)). | Under Texas law, when an insurance policy is ambiguous, courts "must resolve the uncertainty by adopting the construction that most favors the insured." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |
| When a policy provision is ambiguous | "[W]e need only determine whether [the insured's] interpretation is a reasonable one—not necessarily the most reasonable. *Mitchell*, 954 F.3d at 706 (5th Cir. 2020)(citing *State* | If both the insured and insurer "present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous."  Uncertainty must be resolved in favor of the insured "even |

| | *Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981)). | if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem. Co. v. Lynd Co*., 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |
|---|---|---|

9.      This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiffs and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

10.      Plaintiffs James Sims and Neil Sims (the "Sims") are citizens and residents of Selma, Texas. At all times relevant hereto, the Sims owned the dwelling and other structures located at 8112 Woodcliff Blvd., Selma, Texas (the "Insured Sims Property").

11.      Plaintiffs Neal Comeau and Liliana Comeau (the "Comeaus") are citizens and residents of Houston, Texas. At all times relevant hereto, the Comeaus owned the dwelling and other structures located at 18726 Forest Deer Road, Houston, Texas (the "Insured Comeau Property").

12.      Defendant Allstate Fire is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Allstate Fire is authorized to sell property insurance policies in the State of Texas, including within this judicial district.

13.      Defendant Allstate Vehicle is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Allstate Fire is authorized to sell property insurance policies in the State of Texas, including within this judicial district.

14.      Defendants are both affiliated insurance companies within the Allstate insurance group, and are both subsidiaries of the Allstate Corporation, which owns and controls each. Both Defendants share the same corporate headquarters.

15.     Defendants engaged in the in the contractual breaches described herein in a uniform matter and pursuant to a uniform policy. Property insurers within the Allstate insurance group collectively operate a centralized claims adjustment operation in which their adjusters work on claims for multiple different entities, including Defendants, using the same policies and procedures that breached the policy provisions at issue in this case for adjusting and paying insurance claims.

16.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Defendants' property insurance policyholders who are similarly situated.

17.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, Defendants have agents in the Western District of Texas for the conduct of their usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance.

18.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendants because they have availed themselves of the privilege of conducting business and issuing insurance contracts covering structures in the State of Texas.

## FACTS

**A.     Introduction and Scope of Lawsuit**

20.     Defendants sell property insurance coverage for, *inter alia*, homes and buildings in Texas. This lawsuit only concerns first-party insurance coverage for structures located in Texas.

21.     This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

22.     Further, this lawsuit only concerns claims wherein Defendants themselves accepted coverage and then Defendants chose to calculate their ACV payment obligations exclusively pursuant to the replacement cost less depreciation methodology.

**B.     The Sims Insurance Policy and Loss**

23.     The Sims contracted with Allstate Fire for an insurance policy providing coverage for certain losses to the Insured Sims Property. The policy number was 916 494 566 (the "Sims Policy").

24.     The Sims paid Allstate Fire premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

25.     On or about April 2, 2021, the Insured Sims Property suffered damage covered by the Sims Policy.  The damage to the Insured Sims Property required replacement and/or repair.

26.     The Sims timely submitted a claim to Allstate Fire requesting payment for the covered loss.

27.     Allstate Fire determined the loss to the Insured Sims Property was covered by the terms of the Sims Policy.

28.     Allstate Fire calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or RCV), and then Allstate Fire subtracts the estimated depreciation.

29.     The Sims Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below.  In contrast with the Sims

Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form."

30.    The Sims Policy does not contain a labor depreciation permissive form.

**C.    The Comeau Insurance Policy and Loss**

31.    The Comeaus contracted with Allstate Vehicle for an insurance policy providing coverage for certain losses to the Insured Comeau Property. The policy number was 838 818 448 (the "Comeau Policy").

32.    The Comeaus paid Allstate Vehicle premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

33.    On or about February 16, 2021, the Insured Comeau Property suffered damage covered by the Comeau Policy. The damage to the Insured Comeau Property required replacement and/or repair.

34.    The Comeaus timely submitted a claim to Allstate Vehicle requesting payment for the covered loss.

35.    Allstate Vehicle determined the loss to the Insured Comeau Property was covered by the terms of the Comeau Policy.

36.    Allstate Vehicle calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or RCV), and then Allstate Vehicle subtracts the estimated depreciation.

37.    The Comeau Policy does not contain a labor depreciation permissive form.

D.    **Defendants' Calculation of Plaintiffs' ACV Payment**

38.    In adjusting Plaintiffs' claims, Defendants affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate their losses and to make their ACV payments. Defendants did not use any other methodology to calculate Plaintiffs' ACV payments.

39.    Defendants did not calculate any portion of Plaintiffs' losses by reference to or analysis of any alleged increase or decrease in the market value of their homes, or the market value of any portion of their property.

40.    Defendants did not conduct an appraisal of Plaintiffs' losses.

41.    Defendants did not conduct an appraisal of the Plaintiffs' properties.

42.    Defendants have waived, and are estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the "replacement cost less depreciation" methodology.

43.    Soon after the Plaintiffs' respective losses, Defendants sent adjusters to inspect the damage and estimate ACV.

44.    Defendants used the same commercially-available computer software to estimate their RCV, depreciation, and ACV calculations. The software used to calculate the payment to Plaintiffs is called Xactimate®.

45.    As set forth in the written Xactimate® estimates provided to Plaintiffs, Defendants determined that Plaintiffs had suffered covered losses to their respective properties. The Xactimate® estimates generated by Defendants included the estimated cost of materials and future labor required to complete the repairs (the RCV).

46.     In calculating its respective ACV payment obligations to Plaintiffs, Defendants utilized Xactimate® to determine the depreciation to subtract from the RCV.

47.     Plaintiffs were underpaid on their ACV claims and deprived of the use of their money from the time they should have received full ACV payment until the date they actually recovered the wrongfully withheld amounts, as more fully described below.

**H.      Defendants' Practice Of Withholding Future Labor As Depreciation**

48.     For Plaintiffs and putative class members, Defendants used Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and is also used to calculate depreciation to determine ACV payments under the "replacement cost less depreciation" methodology.

49.     The only methodology used by Xactimate® to calculate ACV payments for structural damage is the "replacement cost less depreciation" methodology.

50.     Defendants unfairly manipulate Xactimate® to withhold future labor from ACV payments.

51.     Xactimate® generates its estimate prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

52.     When adjusting property insurance claims with Xactimate®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

53.     The Xactimate® software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

54.    Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software user to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



55.    When Defendants calculated Plaintiffs' ACV benefits owed, Defendants withheld costs for both the materials and future labor required to repair Plaintiffs' properties as depreciation, even though labor does not depreciate in value over time. Defendants withheld labor costs as depreciation throughout their ACV calculations as depreciation.

56.    In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

57.    Defendants' withholding of future labor costs as depreciation resulted in Plaintiffs receiving payment in an amount less than what they were entitled to receive under their policies. Defendants breached their obligations under Plaintiffs' policies by improperly withholding the future cost of labor as depreciation.

58.    Without expert assistance, Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the respective estimate.

59.    While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

60.    Defendants' failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their losses.

61.    Future labor which has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

62.    Defendants materially breached their duty to indemnify Plaintiffs by withholding future labor costs from ACV payment as depreciation, thereby paying Plaintiffs less than they were entitled to receive, including but not limited to depriving Plaintiffs of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

63.    Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

64.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

65.    The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All Allstate Fire and Allstate Vehicle policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in Texas; and

(2) for which Defendants accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

66.    Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

67.     Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

68.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe hundreds or thousands of people geographically dispersed across Texas have been damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants.

69.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

70.     Defendants have acted on grounds generally applicable to the proposed class in that Defendants have routinely withheld labor costs as described herein in their adjustment of property damage claims under their policies of insurance. It is reasonable to expect Defendants will continue to withhold labor to reduce the amount they pay to its insureds under these policies absent this lawsuit.

71.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.    Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

b.    Whether applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.    Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

d.    Whether Defendants have a custom and practice of withholding future labor costs in the calculation of ACV payments;

e.    Whether Plaintiffs and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

f.    Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

72.    Plaintiffs' claims are typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

73.    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and

experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

74.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

75.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

76.    Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members

(if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

77. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

78. Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

**COMPLIANCE WITH STATUTORY PREREQUISITES**

79. In compliance with Chapter 542A of the Texas Insurance Code and any other statutory requirements, Plaintiffs, on behalf of themselves and the putative class, gave Defendants notice of their intent to pursue this action. Notices were sent via written letter dated March 15, 2022 (the "Notices").

16

80.    The Notices included a statement of the acts or omissions giving rise to the claims, the specific RCV amount alleged to be owed to Plaintiffs for damage to or loss of their covered property (as well as the amounts owed to Plaintiffs and putative class members, *i.e.*, the improperly withheld labor costs), as well as the amount of attorney's fees and expenses incurred as of the date of the Notices.

81.    Copies of the Notices were sent to Plaintiffs, and the Notices themselves included a statement that copies of the Notices were provided to the claimants.

**COUNT I**
**BREACH OF CONTRACT (Class Action)**

82.    Plaintiffs restate and incorporate by reference all preceding allegations.

83.    Defendants entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Defendants and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

84.    These policies of insurance are binding contracts under Texas law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

85.    Defendants drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendants are calculating ACV under a replacement cost less depreciation methodology.

86.    In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policy.

87.     Defendants breached their contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

88.     Defendants' actions in breaching their contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

89.     In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

## COUNT II
## BREACH OF CONTRACT (Individual Claims)

90.     Plaintiffs restate and incorporate by reference all preceding allegations.

91.     The insurance policies issued by Defendants are binding contracts supported by valid consideration.

92.     Defendants are in total, material breach of each of the policies issued to the respective Plaintiffs and are liable to the respective Plaintiffs for the maximum allowed by the subject insurance policies for the direct physical loss and damage caused by the covered loss at issue, along with other loss, damage, and expense covered by the terms and conditions of the policies, less the deductible and payments previously made. Specifically, Defendants breached their respective contracts by their failure and refusal to fully and promptly pay the amounts owed to Plaintiffs as required by the terms of the insurance policies at issue. To date, Defendants have failed to make full payment to Plaintiffs.

93.     As a result of Defendants' breach of contract, Plaintiffs have sustained compensable losses, including loss and damage covered by the terms of each of Plaintiffs' insurance policies as well as consequential damages arising from the ongoing delay in payment.

As a result of Defendants' breach of contract, Plaintiffs were prevented from timely completing the necessary repairs.

94.     Defendants are liable to Plaintiffs for their losses.

## COUNT III
## DECLARATORY JUDGMENT AND RELIEF (Class Action)

95.     Plaintiffs restate and incorporate by reference all preceding allegations.

96.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

97.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

98.     Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

99.     Plaintiffs seek, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

100.    Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

101.    Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that Defendants' withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiffs and members of the putative class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.      Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5.       Award compensatory damages for all sums withheld as non-material depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.      Award compensatory damages to Plaintiffs, individually, for all amounts to which they are entitled;

7.      Award attorney's fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

20

8.      Pre- and Post-Judgment interest; and

9.      Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

/s Shaun W. Hodge
Shaun W. Hodge
Texas Bar No. 24052995
shodge@hodgefirm.com
The Hodge Law Firm, PLLC
The Historic Runge House
1301 Market Street
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300

***Attorneys for Plaintiffs and
Putative Class Representatives***