UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JAMES SIMS, TERRIE SIMS, NEAL COMEAU, LILIANA COMEAU, JENIFER SIDDAL, JON HOWELL, TERRY DUHON, INDIVIDUALLY AND ON BEHALF OF OTHER'S SIMILARLY SITUATED;

  *Plaintiffs*

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY,

  *Defendants*

Case No. SA-22-CV-00580-JKP

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' ("the Allstate Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint. *ECF Nos. 90, 97*. Plaintiffs responded. *ECF No. 92*. Upon consideration, the Court concludes the Allstate Defendants' Motion to Dismiss shall be **DENIED**.

### FACTUAL BACKGROUND

This Court recited the factual background and parties' dispute in a previous Memorandum Opinion and Order. *ECF No. 28*. However, for ease of reference, the Court will recite the same factual background and central dispute here.

This suit arises from the parties' dispute following a covered loss under Plaintiffs' homeowner's insurance policies.[1] Each of the Plaintiff parties incurred damage to their home and submitted claims for coverage to one of the Allstate Defendants. The parties do not dispute the damage to each property is covered under each policy. The dispute arises in how the Allstate Defendants calculate the initial payment to the insureds for the covered loss.

The parties do not dispute Plaintiffs' policies are replacement cost insurance policies, under which there is a two-step process for recovery of loss payments. At the first step (Step One), the Allstate Defendants pay an insured the actual cash value (hereinafter, "actual cash value" or "ACV") of the insured loss when the home is damaged or destroyed. At the second step (Step Two), if the insured chooses to complete repairs or replacement of the home, they may then seek reimbursement for the actual cost of repairs under the replacement cost value provisions of the policy. The parties do not dispute that Plaintiffs' policies provide the initial ACV payment in Step One may include a deduction for depreciation; however, the policies do not provide a specific definition of ACV or depreciation. In each of Plaintiffs' losses, the Allstate Defendants calculated their initial ACV payments by estimating the cost to repair or replace the damage with new building materials and then subtracted depreciation for both the cost of materials and the anticipated cost of labor. Plaintiffs do not dispute this initial ACV payment may include depreciation for materials, but dispute whether depreciation for anticipated cost of labor may be deducted.

In the Second Amended Complaint, Plaintiffs allege the Allstate Defendants incorrectly calculated the initial ACV payment at Step One by deducting depreciation of the anticipated la-

---

[1] Plaintiffs James and Terrie Sims purchased a homeowner's policy from Allstate Fire and Casualty Company; Plaintiffs Neal and Liliana Comeau, Plaintiff Jon Howell, and Plaintiff Terry Duhon each purchased their individual homeowner's policies from Allstate Vehicle and Property Company; Plaintiff Jenifer Siddall purchased a homeowner's policy from Allstate Indemnity Company.

bor cost. Plaintiffs contend the policy language is ambiguous, by omission, by failing to define ACV specifically to disclose the Allstate Defendants' practice of calculating the initial ACV payment by deducting depreciation of anticipated labor costs. In the Second Amended Complaint, Plaintiffs assert two causes of action for breach of contract. Plaintiffs assert the first breach of contract claim as a class action, asserting the Allstate Defendants breached the subject insurance policies by failing to pay them and members of the proposed class the ACV of their claims by unlawfully depreciating and withholding anticipated labor costs. The class action breach-of-contract cause of action relates solely to the Allstate Defendants alleged deficient ACV payments to Plaintiffs and members of the proposed class at Step One; Step Two replacement cost reimbursements are not at issue. Plaintiffs assert the second breach of contract cause of action as individual claims based upon the Allstate Defendants alleged failure to fully and promptly pay the amounts owed under the subject policies. This second, individual breach-of-contract cause of action is not a subject of this Second Motion to Dismiss. Finally, Plaintiffs seek declaratory relief stating the applicable insurance contracts prohibit the withholding of anticipated labor costs as depreciation when calculating "actual cash value" of the loss. Essentially, Plaintiffs seek declaration that the Allstate Defendants wrongfully reduced the initial ACV payments by depreciating anticipated labor costs.

  The Allstate Defendants previously filed an Amended Motion to Dismiss all causes of action for reasons almost identical to those presented in this Second Motion to Dismiss, which is limited to only the class-action breach of contract and the declaratory judgment causes of action. All parties agreed the previous Amended Motion to Dismiss presented an issue of law and disputed whether the applicable policy provisions of "actual cash value" and "depreciation" are ambiguous. This Court denied the previous Motion to Dismiss, concluding both parties presented

reasonable interpretations of these policy terms, and consequently, Plaintiffs asserted viable causes of action to survive the Motion to Dismiss. *See ECF Nos. 17, 20, 26, 28*. Subsequently, Plaintiffs filed the Second Amended Complaint adding two additional Plaintiff representatives. The Allstate Defendants then filed this Motion to Dismiss the Second Amended Complaint.

## LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Federal Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg.*

*Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## DISCUSSION

**1. Dismissal Pursuant to Federal Rule of Civil Procedure 12(g)**

As an initial argument, Plaintiffs argue this successive Motion to Dismiss filed pursuant to Federal Rule 12(b)(6) should be dismissed because the Allstate Defendants present the same arguments already presented and addressed by this Court in the previous Amended Motion to Dismiss. Plaintiffs rely on Federal Rule 12(g)(2) to conclude the Allstate Defendants improperly filed successive motions to dismiss without seeking leave of court.

Once a party files any Motion to Dismiss under Federal Rule 12, it cannot file another "raising a defense or objection that was available to the party but omitted from its earlier motion" without leave of Court. Fed. R. Civ. P. 12(g)(2). Some uncertainty exists whether Federal Rule 12(g) applies if the plaintiff voluntarily serves an amended complaint or is ordered by the court to submit a more definite statement of the claim because the revised pleading may contain new information or different allegations, making it subject to a defense or objection that was not previously apparent to the movant.

In the present Motion to Dismiss, the Allstate Defendants contend Plaintiffs expanded their claims and allegations in support of their position in the Second Amended Complaint, thus the arguments presented were not available previously and leave of Court is not required under Federal Rule 12(g)(2). Rather than analyze the uncertainty of the law under this procedural posture, the dispute whether the arguments presented were previously available to the Allstate Defendants, and ultimately whether this Court should grant discretionary leave to file this Second

5

Motion to Dismiss, in the interest of caution and to settle any proposed dispute for the remainder of this litigation, the Court will address the substantive merits of the present Motion to Dismiss.

2. **Breach of Contract Cause of Action**

   a. **Parties' Positions Pertaining to the Class-Action Breach of Contract Cause of Action**

In the Second Amended Complaint, Plaintiffs allege that, while a property insurer may lawfully depreciate material costs when calculating the actual cash value at Step One of the payment process for a covered property loss, the insurer may not lawfully depreciate anticipated future labor costs and withhold this amount from the step-one ACV payment. Plaintiffs allege the Allstate Defendants' depreciation and withholding of future labor costs resulted in deficient payment for the covered losses. Thus, Plaintiffs allege the Allstate Defendants breached their obligations under Plaintiffs' policies by improperly depreciating the anticipated cost of labor and withholding this amount from the initial ACV payment.

In defense of the previous Amended Motion to Dismiss, Plaintiffs argued the terms "actual cash value" and "depreciation" as stated in the insurance policy contracts are ambiguous because the policies fail to specify how the Step One actual-cash-value payment will be calculated, or otherwise specify that anticipated labor cost will be depreciated to calculate this actual cash value. Because the policies are ambiguous, Plaintiffs contend the policy contracts must be construed in their favor, and therefore, the Allstate Defendants may not calculate ACV by deducting depreciation of anticipated labor costs.

In the previous Motion to Dismiss and in the present Motion, the Allstate Defendants contend these terms are not ambiguous. The Allstate Defendants contend their practice of calculating the ACV payment is in accordance with the policies' plain terms, which are not ambiguous. The Allstate Defendants contend Plaintiffs' theory that they breached the policies by depre-

6

ciating anticipated labor cost when calculating ACV of damaged insured property is based on Plaintiffs' unreasonable interpretation of the policies. The Allstate Defendants contend Plaintiffs' interpretation allows insureds to receive the full amount estimated for all labor costs for repairing property before the insureds incur that cost, and even if they decide to not repair the damaged property. This conflicts with the policy language, Texas case law, and the ordinary dictionary meaning of the terms "actual cash value" and "depreciation." The Allstate Defendants contend Plaintiffs receive all they are entitled under their replacement-cost Policies because Plaintiffs receive the actual cash value of their insured loss when the property is damaged, and then, if Plaintiffs make the repairs or replacements, they receive full reimbursement for the full amount of costs expended in making the repairs or replacements, less the ACV amount they already received. Consequently, the Allstate Defendants contend their theory and practice of calculating the ACV payment is in accordance with the policies' plain terms, and therefore, is not ambiguous.

      b. **Previous Holding and Determination of Parties' Arguments and Disputed Issue of Law**

Because the parties agreed their dispute presents a pure question of law, this Court addressed the issue and the parties' arguments in the previous Memorandum Opinion and Order upon disposition of the previous Motion to Dismiss. *ECF No. 28*. Specifically, this Court held that, in *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020), the Fifth Circuit recently addressed the same legal issue concerning whether the terms "actual cash value" and "depreciation" were ambiguous in the insured's policies upon examination of Mississippi state law regarding interpretation of contracts. *Id*. For ease of reference, this Court's Memorandum Opinion and Order is recited verbatim below:

In *Mitchell*, the Fifth Circuit held the term "actual cash value" was not defined in the subject insurance policy, and both the insurance company and the insured's interpretations of the phrase were reasonable. [*Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 703, 707 (5th Cir. 2020)]. For this reason, the Court held the subject policy was ambiguous and must be construed in favor of the insured. *Id*.

Because the parties here present the same legal issue for determination as that presented in *Mitchell*, in assessing this Motion to Dismiss, the Court must compare Texas law regarding the interpretation of contracts with the Mississippi law applied in *Mitchell*, as well as the specific Policy provisions implicated and interpreted. Should there be no relevant or determinative distinguishing points in the state law or in the subject insurance policy terms, this Court will follow the Fifth Circuit's holding in *Mitchell*.

**Interpretation of Contracts Under Texas Law**

Insurance policies are controlled by the same rules of construction that apply to contracts generally. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). In this construction, the policy should be considered as a whole to give each part effect and avoid rendering any portion inoperative or controlling. *Id*. at 741. "Under Texas law, 'undefined terms are not *per se* ambiguous'". *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. McMurray,* 342 Fed. App'x. 956, 959 (5th Cir. 2009); *Tolar v. Allstate Tex. Lloyd's Co.*, 772 F.Supp.2d 825, 830 (N.D. Tex. 2011). Interpretation begins with the plain text, and undefined words must be given their plain, ordinary, and generally accepted meanings absent some indication of a different intent. *U.S. Metals, Inc. v. Liberty Mut. Grp.*, 490 S.W.3d 20, 23 (Tex. 2015); *Nat'l Union Fire Ins. Co. of Pittsburgh*, 342 Fed. Appx. at 959.

Determination whether a term is ambiguous is a legal question. *Richland Plantation Co. v. Justiss–Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir. 1982). If the ordinary meaning of the term is susceptible to more than one reasonable interpretation, only then is the term considered ambiguous. *U.S. Metals, Inc.*, 490 S.W.3d at 23; *Nat'l Union Fire Ins. Co. of Pittsburgh*, 342 Fed. App'x. at 959. In the insurance context, if the subject contract is a standard-form policy with provisions prescribed by the Texas Department of Insurance, "the actual intent of the parties is not material," rather, any undefined words are given "the ordinary, everyday meaning of the words to the general public." *Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551–52 (Tex. 2003). A contract is not ambiguous merely because the parties disagree upon the correct interpretation or upon whether it is reasonably open to just one interpretation. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727 (Tex. 1981); *REO Indus., Inc. v. Natural Gas Pipeline Co. of America,* 932 F.2d 447, 453 (5th Cir. 1991). Ambiguity must be evident from the policy itself; it cannot be created by external evidence of intent. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 342 Fed. App'x. at 959.

As shown in *Mitchell*, under Mississippi law as in Texas, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpreta-

8

> tion, the term shall be considered ambiguous and construed in favor of the insured. *Mitchell*, 954 F.3d at 705-06. Consequently, as applied in this case, to prevail on the instant Motion to Dismiss, the Allstate Defendants must show the undefined terms "actual cash value" and "depreciation" in the subject insurance policies cannot reasonably be construed under Plaintiffs' interpretation, that is to omit depreciation of labor costs. *Id*.
>
> In Texas, "actual cash value" in the context of an insurance policy means "repair or replacement costs less depreciation." *Tolar v. Allstate Tex. Lloyd's Co.,* 772 F.Supp.2d at 830; *Ghoman v. New Hampshire Ins. Co.,* 159 F.Supp.2d 928, 934 (N.D.Tex. 2001). In Texas, "replacement costs" is defined as "any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss." *Tolar v. Allstate Tex. Lloyd's Co.,* 772 F. Supp.2d at 830-31; *Ghoman,* 159 F.Supp.2d 928 at 934. As shown in *Mitchell*, Mississippi law is substantially similar, defining "Actual Cash Value" as "the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence." Miss. Code Ann. § 83-54-5(a*)*; *Mitchell,* 954 F.3d at 704. Consistent with this definition, the insurer advised the insured that Actual Cash Value is the "repair or replacement cost of the damaged part of the property less depreciation and deductible." *Mitchell,* 954 F.3d at 704.
>
> The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same with regard to contractual interpretation and are substantially similar with regard to the definition and interpretation of "actual cash value". *Mitchell,* 954 F.3d at 703-05. In its consideration of substantially similar pertinent case law, substantially similar policy provisions and omissions, and the indistinguishable arguments by the parties regarding interpretation of the policy provisions, the *Mitchell* Court concluded the term "actual cash value" was ambiguous in the context of the insurance policy because each party's interpretation was reasonable. Consequently, the *Mitchell* Court held the ambiguity must be resolved in favor of the insured. *Mitchell,* 954 F.3d at 705-07.
>
> Because the Court finds no relevant or determinative distinguishing points between pertinent Texas law and the Mississippi law and the subject insurance policy terms analyzed and applied in *Mitchell*, this Court will follow the Fifth Circuit's holding in *Mitchell*. Following this guidance, as a matter of first impression with regard to application of the Fifth Circuit's ruling in *Mitchell* to a case arising in Texas and governed by Texas law, this Court concludes the undefined term "actual cash value" as it appears in the subject insurance policy contracts is ambiguous because each party's interpretation is reasonable. This ambiguity must be resolved in Plaintiffs' favor, that is, the term "actual cash value" in the subject Policies does not include depreciation of anticipated labor costs. *See Mitchell,* 954 F.3d at 703-07.

*ECF No. 28, pp. 5-8.*

In summary, this Court found no relevant distinctions between Mississippi and Texas law on the issue of contract interpretation, in the policy provisions in which the terms "actual cash

9

value" and "depreciation" appear, or in pertinent state law that would distinguish and prevent the Court from following and applying *Mitchell* in this case. Because the pertinent policy provisions of "actual cash value" and "depreciation", pertinent rules of contract construction under Texas and Mississippi law, and the arguments presented by the parties were substantially similar to those addressed and resolved in *Mitchell*, this Court found *Mitchell* was dispositive of the issues and dispute presented in the previous Amended Motion to Dismiss filed pursuant to Federal Rule 12(b)(6). *See id.* Because both parties' interpretations of the meaning of ACV under the subject policies were reasonable, and because the facts alleged in the operative complaint must be viewed in the light most favorable to Plaintiffs, the Court concluded Plaintiffs sufficiently pled plausible causes of action for breach of contract and, thus, declaratory relief, to survive the Federal Rule 12(b)(6) Amended Motion to Dismiss. The Court notes here that the Fifth Circuit decided *Mitchell* upon an interlocutory appeal from the district court's denial of the defendants' Federal Rule 12(b)(6) Motion to Dismiss, the same procedural posture here.

      **c. Arguments Presented in Second Motion to Dismiss**

In this Motion to Dismiss the Second Amended Complaint, to the extent the Allstate Defendants present the same arguments as presented previously in support of their position, this Court will not address these specific duplicative arguments. Still, the Allstate Defendants contend Plaintiffs' Second Amended Complaint "expanded their allegations (from labor to "'nonmaterial'" depreciation) and tries to substantially modify its damage model (from one based on alleged underpayment of ACV to one based on Defendants' own calculation of ACV) . . . Defendants instant Motion to Dismiss responds to these new allegations and raises significant new authority." *ECF No. 97, p. 1*. However, review of the present Motion to Dismiss reveals the Allstate Defendants do not respond specifically to any of the alleged new or expanded allegations in

the Second Amended Complaint. Instead, in the Allstate Defendants' own words, "[i]n this Motion, Allstate determinatively distinguishes *Mitchell*, relying on both the fair market value distinction in Texas law and the textual and structural distinctions between Allstate's Loss Settlement provision at issue and the SF/Mitchell Policy's loss settlement language." *ECF No. 90, p. 6*. Based upon this admission, the Allstate Defendants actually seek reconsideration of this Court's conclusions drawn in its denial of their previous Amended Motion to Dismiss. To do so, the Allstate Defendants present new arguments to distinguish *Mitchell* and present caselaw issued after the *Mitchell* decision. This second Motion to Dismiss is an inappropriate procedural vehicle to present arguments previously missed or to seek reconsideration of this Court's denial of their previous Amended Motion to Dismiss.

Recognizing the dispute presented in this litigation is the subject of much litigation, to clarify the Court's previous conclusions and to dispel any further attempt to stall this litigation at this preliminary stage, the Court will address the Allstate Defendants' new arguments whether the policy in the *Mitchell* case was different than the policy in this case and whether new caselaw issued after *Mitchell* abrogates its holding or this Court's conclusion. All other arguments presented by the Allstate Defendants in this second Motion to Dismiss either could have been presented in the previous Motion, but were not, or were addressed in the Court's Memorandum and Recommendation. Therefore, the Court will not name or address these arguments.

**(1) Distinguishing Texas's Cost Approach and Mississippi's Replacement Cost Approach analyzed in *Mitchell*; Texas Law Instructs ACV means "Fair Market Value"**

The Allstate Defendants begin by arguing that, unlike Mississippi, Texas law defines ACV as "fair market value," and therefore, the term "actual cash value" as it appears in the sub-

ject Allstate policies is not ambiguous. *ECF No. 90, pp. 9-15*. In doing so, the Allstate Defendants repeat much of the previously presented and addressed arguments, and then go beyond the scope of this Court's focus at this preliminary stage of litigation; instead, arguing the substantive merits of their position.

The Court will address the Allstate Defendants' arguments that Texas law defines ACV as "fair market value" to the extent they contend new cases issued after this Court's previous opinion render this Court's previous analysis and conclusion inaccurate and conclusively support the Allstate Defendants' position. This Court will review these new cases presented as well as the parties' arguments whether any of these new cases change this Court's analysis and conclusion or whether any abrogate or change the Fifth Circuit's holding in *Mitchell*.

**(a) *McKee v. Chubb Lloyds Ins. Co. of Tex.*, 2024 WL 1161391, at \*5 (W.D. Tex. Mar. 15, 2024), adopted by 2024 WL 2720450 (W.D. Tex. May 28, 2024)**

Allstate contends Magistrate Judge Chestney's Report and Recommendation in *McKee v. Chubb Lloyd's Ins. Co. of Tex.*, as adopted by Judge Rodriguez, contradicts this Court's conclusion that Plaintiffs presented a plausible legal theory that the term "actual cash value" is ambiguous and not clearly defined within the policy. *ECF No. 90, at 2-3, n.6*. However, the Allstate Defendants fail to present the factual distinction and the true holding in *McKee* and quote advantageous passages out of context.

In *McKee*, Magistrate Chestney addressed a dispute presented in a Motion for Partial Summary Judgment, not a Federal Rule 12(b)(6) Motion to Dismiss. *McKee*, 2024 WL 1161391, at \*1. Although the specific dispute utilized some of the same policy provisions at issue in this case, the dispute pertained to the proper damages model, not interpretation of the pertinent policy terms or challenge to their clarity. *Id*. at \*2-3. The insured plaintiffs alleged the insurers undervalued the estimated replacement cost value to repair the damage. The insurer alleged the plain-

12

tiffs could not show damages exceeded prior payments because the Policy limited recovery to the "actual cash value" of their covered loss, and the Plaintiffs' damages model only presented evidence as to their repair or replacement costs. *McKee*, 2024 WL 1161391, at *2-3.

Magistrate Judge Chestney concluded the insurer was not entitled to summary judgment on the plaintiffs' breach of contract cause of action based on the argument that the policy limited the plaintiffs' recovery to "actual cash value." *McKee*, 2024 WL 1161391, at *4. Consequently, while the parties' dispute involved the same policy provisions regarding "actual cash value" and "replacement cost", the parties' dispute and the application of the policy provision is factually different and distinguishable from this case.

In her analysis of the parties' dispute in *McKee*, Magistrate Judge Chestney also observed, as the Allstate Defendants report, "'[a]ctual cash value' is not defined by the policy. But under Texas law, the term 'actual cash value' is interpreted to be synonymous with 'fair market value.'" *McKee*, 2024 WL 1161391, at *5 (citing *Ghoman v. N.H. Ins. Co.*, No. 3-01-CV-0092-BD(L), 2001 WL 1112535, at *4–6 (N.D. Tex. Sept. 6, 2001)). However, Magistrate Judge Chestney also went on to state, "[t]his [fair market] price can be quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation." *McKee*, 2024 WL 1161391, at *5. The Allstate Defendants misrepresent Magistrate Judge Chestney's conclusion by pulling an advantageous phrase out of context, stating she concluded Texas law defines ACV as "fair market value." In fact, Magistrate Judge Chestney went on to state, fair market value "can be quantified in one of three ways, in which "the cost of repair or replacement less depreciation" is one. *Id.* (quoting *See Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 615–16 (Tex. 1992)).

Here, the dispute is whether, when calculating "the cost of repair or replacement less depreciation" the Allstate Defendants can unilaterally define "depreciation" to include depreciation of anticipated labor costs. Magistrate Judge Chestney did not conclude "fair market value" or depreciation can include depreciation of anticipated labor costs. For these reasons, Magistrate Judge Chestney's reasoning and ultimate conclusion, and Judge Rodriguez's adoption, in *McKee* are inapposite to the dispute before this Court.

### (b) *Kahlig v Affiliated FM Ins. Co.*, No. 23-50144, 2024 WL 1554067, (5th Cir. Apr. 10, 2024)

In *Kahlig*, the parties also disputed the appropriate damages model: whether it be ACV or replacement cost. *Kahlig*, 2024 WL 1554067, at *1. The parties do not dispute the interpretation of these policy terms or challenge their clarity, as in this case. The dispute on the Motion for Summary Judgment centered on whether Kahlig performed repairs within two years of the date of loss to invoke the replacement cost damages model. *Id*. The district court granted summary judgment, finding Kahlig, the insured, did not create a fact question whether the insurer breached the policy by paying the actual cash value of claimed losses, rather than their replacement cost value, specifically finding the repairs were not made within two years of the loss. *Id*. The Fifth Circuit affirmed the grant of summary judgment.

The factual situation, procedural posture and dispute in *Kahlig* are clearly different than those in this case. Thus, *Kahlig* is clearly distinguishable and inapplicable to this case. Further, nothing in *Kahlig* abrogates the *Mitchell* holding.

### (c) *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020)

The Allstate Defendants erroneously argue Texas law rejects Mississippi's legal proposition of interpreting ACV as equal to replacement cost less depreciation (RCLD), citing the Fifth Circuit's decision in *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020), issued weeks

14

prior to *Mitchell*. *ECF No. 90, p. 5*. The Allstate Defendants contend *Singleton* specifically held Texas and Mississippi property insurance laws are materially different when it comes to defining ACV, thereby rendering *Mitchell* inapposite to this case. *ECF No. 90, pp. 5, 10-11 and n.33*. The Allstate Defendants' argument could have been presented in the previous Motion to Dismiss; however, the Court will address it to provide clarity for the remainder of this litigation.

First, *Singleton* involved an auto-insurance policy, which specifically stated ACV is determined by the market value of the vehicle at the time of the accident. *Singleton*, 953 F.3d at 337. The dispute in this case arises because the Allstate Defendants' policies do not define "actual cash value" or "depreciation." Second, the Fifth Circuit reasoned that in the car-insurance context, when the market value of an insured car can be determined, ACV is equivalent to market value. *Id*. at 337-38. The *Singleton* court expressly limited its "market value" definition of ACV to the car-insurance context and did not hold this reasoning applies in the property-insurance context. *Id*. at 338, n.4. Consequently, the Fifth Circuit did not reference or follow *Singleton* in its later interpretation of the loss provisions of the homeowners' insurance policy in *Mitchell*.

## Conclusion

While it is true Texas law defines ACV to be "fair market value," as the cases cited by the Allstate Defendants may state, the dispute at the heart of this litigation does not stop there, nor is this the focus upon the Court's determination of a Federal Rule 12(b)(6) Motion to Dismiss. The substantive dispute of the parties here is whether the term "depreciation" as used in this context of calculation of the "actual cash value" can include depreciation of anticipated labor costs. To answer this question, the new cases cited by the Allstate Defendants are inapposite, and *Mitchell* remains the guiding precedent.

**(2) Distinguishing Policy Provisions at Issue in *Mitchell* from Those in This Case**

The Allstate Defendants argue that, unlike the State Farm Insurance policy involved in the *Mitchell* case, the ACV clause in their policies "expressly allows deduction for depreciation without caveat, exception, or limitation, it operates not as a liability sub-limit, but rather a standalone, loss-valuation methodology for measuring covered structural damages value, and, critically, it neither promises nor references replacement cost." *ECF No. 90, pp. 2, 6-8, 20-23*. The Allstate Defendants begin by stating Plaintiffs "admit their interpretation disallows depreciation of any other price components within Xactimate® systems unless the loss settlement text at issue "expressly uses the terms 'labor' and 'depreciate' or 'depreciation'" or "addresses the issue [of non-material (labor) depreciation] within the text of the policy [itself]." *Id.* at 21.

As an initial matter, again, the Allstate Defendants' argument pertains to the substantive merit of this litigation, not the focus of the Court's determination at this preliminary stage of litigation: whether Plaintiffs present a viable cause of action. Next, to the extent the argument is relevant, the Allstate Defendants propose a strained interpretation of the Plaintiffs "admission," which states,

> Most property insurers in Texas do not withhold future labor under the auspice of 'depreciation' when making ACV payments for structural loss claims. However, some property insurers in Texas do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld, i.e., a form that expressly uses the terms "labor" and "depreciate" or "depreciation" and addressing the issue within the text of the policy or endorsement. Others, such as Defendants, withhold future labor as depreciation even under policies that do not contain such provisions. Defendants' policies at issue did not include any provision or language that allow them to withhold labor as depreciation when making ACV payments for structural loss claims.

*ECF No. 92 (Second Amended Complaint), par. 5*.

This cited paragraph, labeled an "admission," states precisely the legal dispute in this case and in the *Mitchell* case: whether insurers can deduct depreciation of anticipated labor cost

16

from the Step One ACV payment. Further, the fact that the Allstate Defendants' valuation software, Xactimate®, allows for or incorporates depreciation of labor costs cannot possibly render Plaintiffs' policy interpretation unreasonable, nor can this fact be imputed to any insured's understanding of the policy terms or how "depreciation" will be calculated. Thus, this argument has no merit.

Second, the Allstate Defendants compare the language within the policies at issue in *Mitchell* with the policies at issue in this case, particularly what the Allstate Defendants label "the Loss Settlement Provision." Specifically, the Allstate Defendants base this argument on language in its policies that outlines how payment for a covered loss at the first step is calculated using the "actual cash value" methodology: "Actual Cash Value: If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation." *ECF No. 90, pp. 7, 20-23*. Further, the Allstate Defendants argue that unlike the policy in *Mitchell*, the policy at issue here "does not promise 'replacement cost,' and it denotes ACV as a standalone 'method[]' by which 'payment for covered loss' may be determined." The Allstate Defendants conclude these differences distinguish this policy to remove any applicability of the *Mitchell* decision. *Id.*

The Allstate Defendants' argument fails, first, because it relies upon evidence consisting of the insurance policy implicated in *Mitchell* and requires comparison with the policies implicated in this case. The Allstate Defendants attach this policy to their Motion to Dismiss, as well as the Plaintiffs' policies. However, this Court's review cannot go beyond documents referred to in the Second Amended Complaint and central to Plaintiffs' claims. *Brand Coupon Network*, 748 F.3d at 635. Consequently, this Court will not address the Allstate Defendants' arguments distinguishing *Mitchell*. As the Court previously concluded, the *Mitchell* opinion addresses the identi-

cal dispute regarding ambiguity of the terms "actual case value" and "depreciation" and caselaw regarding interpretation of contracts. The *Mitchell* Court determined Plaintiffs in that case plead enough facts to state a cognizable legal theory. This Court will continue to follow and apply this holding at this stage of litigation.

Second, in making this argument, the Allstate Defendants present substantive argument pertaining to the merits of this litigation, going beyond the breadth of this Court's analysis of a Federal Rule 12(b)(6) Motion to Dismiss. Here, this Court must only determine whether Plaintiffs plead enough facts to state a cognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. at 678. The focus is not on the substantive merits of any asserted cause of action. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. As in *Mitchell*, the court finds Plaintiffs plead enough to state a cognizable legal theory.

## CONCLUSION

For the reasons stated in this Court's previous Memorandum Opinion and Order and stated herein, the Court concludes there are no relevant distinctions between Mississippi and Texas law on the issue of contract interpretation. The Court concludes there are no relevant distinctions between the policy provisions at issue in this case and the interpretive meaning of the terms "actual cash value" and "depreciation" as used in the Policies. Because the relevant policy provisions, pertinent state-law rules of construction, and arguments presented by the parties are substantially similar to those presented and addressed in *Mitchell*, the Court finds *Mitchell* is dispositive of the legal issues presented in both of the Allstate Defendants' Motions to Dismiss. The Court finds further that the District Court and Fifth Circuit cases issued after *Mitchell* do not alter the Fifth Circuit's holding in *Mitchell*, nor do these cases change the Court's analysis of the legal

issues presented by the parties in both of the Allstate Defendants' Motions to Dismiss. *See id.* Accordingly, the Court finds Plaintiffs stated plausible causes of action for breach of contract in Count 1 and, thus for the requested declaratory relief. Consequently, the Allstate Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **DENIED**.

    It is so ORDERED.
    SIGNED this 21st day of August, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE